We're going to move now to appeal 22-2548 Genetta Greer v. Kilolo Kijakazi. We're going to begin with oral argument from Mr. Farr. Good morning and may it please the court. Genetta Greer has been in her 60s throughout the relevant claim period for her disability insurance benefit claim. If she'd been limited to sedentary work, it's likely that she would have been found disabled. Instead, she was limited to light work. The judge reached his determination because, in part, he relied upon the state agency consultant who said that she was capable of light work, and in part because he said that the evidence that existed after their review still supported light work, no stand-walk limitations, because he didn't think it changed the picture that much. Now the state agency consultants, the first two levels at the initial and reconsideration stage, considered some of the evidence related to deep venous thrombosis, but they didn't seem to acknowledge the existence of any reflux scans that had been available. There were two reflux scans over about a year period. By the time of a quality review at the reconsideration level, this quality review consultant acknowledged the first of the two reflux scans. So still not acknowledging that this is an ongoing issue of deep venous thrombosis resulting in venous reflux in the legs, or at least in one leg. So that's already still not fully addressing the issues, creating kind of a supportability issue, because it's not clear that the consultants were already addressing all the evidence available to them. But the judge could probably stand by that. I'm not saying that alone would be reversible error, but it starts to make it a little flimsy. And then this quality review consultant also said that if there had been more evidence of, say, issues with diminished strength, or issues with gait, or if she had worse back problems or worse hip problems, then that would be evidence for a stand-walk limitation. As it is, she thought it was reasonable not to give such a limitation. Is that Dr. Orfi? Yes, Dr. Orfi. So jumping ahead, because that was, I believe, May 2018, so to December 2018, we start getting issues with sensation loss, with swelling, with pain, but also specifically diminished strength and diminished muscle tone. So we're actually getting... Dr. Orfi had before her, in May of 2018, Dr. Brown's findings. Yes. And those findings included a notation of decreased touch and pain... Yes. ...in the lower extremities. Why wouldn't that be sufficient, given its similarity to Dr. Mata's subsequent findings? Because I would say that, at some point, neuropathy has to start impacting your ability to stand and walk. And one of the reasons that Dr. Orfi specifically said that she didn't think it was impacted was because she still had intact strength. That finding was not included in any of Dr. Brown's records. But as soon as we get to Dr. Mata, which is again months later, we start seeing consistently diminished muscle strength and tone from visit to visit. That's specifically filling in the evidentiary gap that Dr. Orfi believed existed in the case. This isn't the most dramatic evidence. I know it's not an MRI or anything, but it is specifically speaking to what Dr. Orfi said the gap was. I know that the government has said in response that this evidence is not probative enough. But we have here, unlike a lot of other cases where the decision was affirmed, a doctor specifically saying, I'm looking for this. And now we get evidence that's directly responding to that. A lot of the time, it may not be clear exactly what would be enough to shift the picture, and we'd have to speculate a lot as to why do we think that a doctor would now find a different conclusion. But Dr. Orfi's own notes indicate the reason she reached her conclusion said, I still think the earlier consultant's review is reasonable, is because we don't have evidence of diminished strength or a gait issue. Now, this is a subjective point, not an objective point. But at the hearing, Janetta Greer also testified to having to nude an assistive device. I'm not saying that alone should require remand. But coupled with the fact that we have this objective evidence of diminished muscle strength suggests that, yeah, we're also getting issues with gait now. That could have been developed further if the ALJ had either maybe reached back out to Dr. Orfi to do another check, maybe send it to a new consultative exam. I don't think that would have been necessary if he'd just reached out to Dr. Orfi and say, does this diminished strength now affect the ability to walk? It would have been very easy to fix this, too, because we're not talking about a treating source doctor. We're not talking about necessarily needing to get another exam. It's literally a state agency's own doctor that they could have just gone back out to and asked one question. Does this new diminished strength now affect the ability to walk? But I'm looking here at Dr. Moda's notes. With regard to gait, she says the gait's unremarkable with normal posture, propulsion, and balance. Yes. Right, and so what you're really focusing on with regard to Dr. Orfi's conclusions when Dr. Orfi says, but intact strength and intact gait, you're really challenging the first and not the latter. Correct, yes. As far as the objective evidence goes, we don't have objective evidence showing a gait deficit here. So it's that diminished strength and muscle tone. As I cited in my brief, though, diminished strength and muscle tone is connected to ambulation abnormalities. I can't say more on that. I'm not a medical expert. But it starts to strain plausibility that you can have not just diminished sensation, not just swelling, not just pain, but also now you don't even have the strength a normal person would have in their legs to walk around. All these things together, at some point, we'd expect somebody to start having some issues with standing and walking. And especially since the doctor specifically said this is what she'd be looking for. I don't think that we have the evidence that all of the elements are there. After all, this is largely about neuropathy. And some of the factors that Dr. Orfi cited, like lack of severe degenerative disc disease or lack of more than mild hip osteoarthritis, that would be irrelevant in a case like this. The agency does have its own neuropathy listing, 11.14. So it does consider neuropathy potentially disabling, even without getting to the work question on its own. So obviously we would not need to establish that other conditions exist in addition to neuropathy to say that neuropathy could be bad enough. So the fact that there are other things that the doctor suggested we could be looking for to say that there are greater standing and walking limitations does not mean that we had to find all of them. We just had to find some. Or I'm arguing at least one, because it's so consistently present in all the treatment notes by Dr. Mota afterwards. The other thing I'd kind of like to address in advance is the Bakke opinion, which I know that the government has cited too. I think that opinion is dealing with evidence that the consultants had access to. If I understand correctly, there was an EMG that they had access to and a myelogram that they did not. But they were from kind of the same period, and they didn't seem to say different things. There wasn't any indication that this evidence was going to fill an evidentiary gap that the consultants perceived that they had. Also, Bakke, I believe, was out being very active in the woods, seemed to have a very active lifestyle based on testimony medical records. And I don't think that's consistent with Ms. Greer, who is now alleging that she has these issues with standing and walking to the extent that she needs to use an assistive device. And if there are no further questions, I'd like to reserve the remainder of my time for rebuttal. Very good. That will be reserved. Thank you, Mr. Farr. We're going to move now to argument from the appliee from Ms. Hugo. Your Honors, may it please the Court, Megan Hugo on behalf of the Commissioner. The ALJ in this case reasonably determined that Ms. Greer could perform light work with postural and environmental limitations. She supported that determination with substantial evidence. He, I'm sorry, it was a male judge. He discussed the only three medical opinions in the record, and he found them persuasive. Those were from three state agency doctors, all of whom found that Ms. Greer could perform a range of light work. He cited physical examinations that showed findings like normal gait, stance, balance, range of motion, and only mildly diminished foot sensation. He cited exams showing no pain or only mild pain on examination of the feet. He cited imaging studies in Ms. Greer's low back and hips that showed mostly mild findings. And he considered that Ms. Greer received conservative treatment that she reported helped her symptoms. Ms. Greer would have the Court disregard all of that evidence in favor of a nonspecific finding of decreased muscle strength and tone in four of Dr. Moda's podiatry records. But this argument failed because it overlooks key facts in the case and relies on faulty assumptions and speculation. Ms. Greer ultimately failed to show that podiatrist Moda's observation of an unspecified decrease in her muscle tone and strength was so significant that it required the ALJ to disregard all of the opinions in the record and obtain a fourth. First, I agree that although the ALJ noted Dr. Moda's finding, the ALJ didn't comment on the finding or explain why he was disregarding it or why it didn't have an impact one way or the other. I agree, Your Honor. The ALJ discussed all four of Dr. Moda's records and some findings from those records did not specifically discuss the decrease in strength, but I do not believe that's error. Certainly not reversible error as this court has recognized, you know, ALJs cannot recite every piece of evidence from the records and are able to give— But it's hard to understand based on the record why the ALJ didn't put any weight on Dr. Moda's findings because he didn't tell us. I think that's a fair point, but I think if you look at the totality of Dr. Moda's records, there are other things that the ALJ didn't mention that really show these records are not significant and do not show a significant change. So, for instance, Dr. Moda recommended that Ms. Greer walk for exercise, did not give her any precautions when doing so, which one would have suggested if Dr. Moda was concerned with this unspecified muscle weakness, did not recommend muscle strengthening exercises, also suggesting she was not terribly concerned with this finding. Ms. Greer, in fact, reported that she was active with exercise to Dr. Moda. She denied recent falls. She denied balance issues. She reported that pain cream reduced her neuropathy symptoms and that a gel cushion reduced her foot pain. So, again, this Court has said that the ALJ doesn't need to explain everything in the record, and I think if the Court looks at the totality of Dr. Moda's records, including what Ms. Greer herself reported about her symptoms, the Court would agree that these records don't show the kind of significant new diagnosis that the Court has found that would require the ALJ to have gotten another medical opinion. Why isn't a doctor needed to make that interpretation of these medical records? A decrease in strength? Yes. I mean, I don't think if every case was sent back for something like that. It's totally unspecified. There's no measurement of how bad this muscle weakness is. If you look at functionally speaking, she still has a normal gait, normal balance, propulsion, posture. She's still not using an assistive device, nor did Dr. Moda recommend one. You know, this is the kind of evidence that the Court has said that ALJs are, in fact, directed to look at by the regulations. Didn't she testify she was using an assistive device? She did, but also she had a new impairment after the date last insured. She had Achilles tendonitis, for which Dr. Moda prescribed a walking boot and more intensive pain medications. There is no mention in the record prior to this walker boot of her using an assistive device in any of the medical records. And again, she told, you know, she reported to Dr. Moda that she was active, and Dr. Moda recommended that she walk for exercise, which one would not suspect she would do if she had been, you know, with an assistive device at the examination. So turning to the key facts that I think this position overlooks, first is it overlooks that Ms. Greer was represented by counsel in this case and is therefore presumed to have made her best case before the ALJ. And relatedly, it was at all times her burden to prove that she was disabled. She knew that the only three medical opinions in the record said that she could do light work, but she never presented an opinion of her own. She never presented an opinion from Dr. Moda or another doctor to show what this decrease in muscle tone supposedly meant in terms of her functioning, never asked the ALJ for another opinion, never made an argument at the hearing about the supposed significance of the strength record, and did not even submit a post-hearing brief addressing Dr. Moda's records, despite the fact that the record was left open for 30 days after their hearing for submission of additional evidence. Now, she's coming to the court for relief now, but she did not do all she could below to meet her burden of proving that she was disabled. The argument also relies on faulty assumptions and speculation. Ms. Greer wants the court to assume that Dr. Orfeh would change her opinion based solely on Dr. Moda's observation of this unspecified decrease in muscle tone and strength. But Dr. Moda's records, again, as I discussed, continue to show that she had normal gait, normal posture, normal propulsion, and normal balance. There's no evidence in the record that she ever used an assistive device during the relevant period. Dr. Moda observed no more than mild pain, and she recommended only conservative treatments. Given the totality of the evidence in the record, it is not reasonable to assume that Dr. Orfeh's opinion would have changed based solely on this single observation. One of the articles that counsel referenced earlier shows why this position is untenable. They cited it for the proposition that people with decreased lower leg strength have walking abnormalities because they had abnormal balance and gait. So muscle weakness on its own, especially when we don't know the degree of it, does not suggest any additional functional limitations beyond those that are already captured in the residual functional capacity, particularly where balance and gait are consistently observed as normal. And the article also suggests that there are strengthening exercises that can significantly improve lower extremity leg strength, which Dr. Moda did not recommend, again, as one would have expected her to do if she was concerned about this weakness. So for these reasons, this case is not like the cases that Ms. Greer relies on in her brief, but is more akin to the court's recent decision in Bakke, where the court explained that state agency doctors' opinions can still constitute substantial evidence despite later medical evidence, as long as the records do not necessarily undermine previous conclusions. And the court looked at what the claimant's own doctors did with that CT myelogram test that the state agency doctors did not have the opportunity to review. They looked at it, and they had mild reactions. They did not recommend intensive treatment. They recommended only physical therapy and weight loss, did not increase pain medication, and did not recommend surgery. The court concluded that the doctors' mild reactions to the test showed that it was not a new significant medical diagnosis that reasonably could have changed reviewing physicians' opinions, and the ALJ was therefore allowed to rely on them. And here is in Bakke. Dr. Moda's records failed to document significant changes from Greer's earlier records. She did not diagnose any new impairments. She did not recommend any intensive treatment. The ALJ therefore reasonably relied on the existing opinions, as well as the other substantial evidence that he cited in his decision, rather than submitting these records to a fourth medical expert that Ms. Greer did not even indicate was necessary. Ms. Hugo, can you point to me in the record? I'm looking at Dr. Moda's notes and reports where she says or recommends exercise or walking. Yes. It is the first visit in December of 2018. It's page 617 of the record. The heading is 3, type 2 diabetes, and it's sort of midway through there. I encourage the patient to walk for exercise to help improve circulation to the feet. I'm sorry. What's the date of that? I'm sorry. December of 2018. It was the first visit with Dr. Moda. If the court has no further questions, I respectfully request that you affirm the district court's decision. Thank you, Ms. Hugo. We'll now move Mr. Farback to you for rebuttal argument. Thank you, Your Honor. I'm a little confused by the argument made in response that there's no muscle strength or anything recommended and no exercise, but also Greer is not as limited as said because she's been recommended walking to improve circulation. I would expect that walking would improve not only circulation but strength because you're walking on your feet. That's not specifying an amount of time that somebody should be walking. This is not a case where we have to show either that she meets a listing or cannot perform any work in the national economy. We have to show she can't do her light past work. And if she can't do light work, she should have been found disabled because of her age. So we don't have to show that, oh, she could only stand or walk for 10 or 20 minutes at a time before having to sit down. Being able to go to a doctor's visit and not exhibit ambulation issues does not mean that she wouldn't have ambulation issues if she's on her feet six hours a day, which is what would be required for light work. She has issues with strength. She has issues with circulation. She has issues with swelling. These are all things that evidence that she'd have problems with being on her feet that long. As to the fact that the level of diminished strength in her feet is unspecified, I point out that neither is the recommendation by Dr. Orfi that there should be a finding of diminished strength to support greater stand-walk limitations. I don't quite know what we would need to show when a doctor that the judge is relying on says, you need to show some extra things, like diminished strength. And then we show diminished strength. That seems to be directly responding to and contradicting the earlier finding, not because the doctor was wrong at the time. There was no diminished strength then. But there is now at a later point in time. That seems a different situation in Bakke, where the evidence that was being considered was for the same period and didn't actually seem to impact how anybody interpreted the level of limitation. But I do see that I'm out of time, so I would just ask that this court remand. Thank you. Thank you very much, Mr. Farr. Thank you, Ms. Hugo. The case would be taken under advisement.